CHARLES MELVIN ROSS *v.* STATE OF INDIANA.

[No. 277S55. Filed June 8, 1978. Rehearing denied August 23, 1978.]

*John H. Meyers,* Public Defender, of Lafayette, for appellant.

*Theodore L. Sendak,* Attorney General, *Jane M. Gootee,* Deputy Attorney General, for appellee.

HUNTER, J.—The defendant, Charles Ross, was convicted by a jury of two counts of second-degree murder and one count of first-degree murder. He now appeals raising the following issues:

1. Whether the prosecutor commented erroneously on the defendant's failure to testify;

2. Whether the search warrant was defective because the supporting affidavit did not contain an oath and did not show probable cause;

3. Whether the corpus delicti was established sufficiently to place the defendant's admissions into evidence; and

4. Whether the motion to dismiss based on the ground that the informations were defective was erroneously denied.

The evidence most favorable to the state reveals that Adron Tucker also known as Catherine Ross, lived with the defendant in Lafayette, Indiana, for fourteen years. They had five children. The three youngest children were brutally murdered when they were only a few months old. The remains of these children were found buried in the basement and the backyard of the home. Adron testified that at the time of the death of each infant, she was working the 11:00 p.m.-7:00 a.m. shift at various nursing homes.

Diana Elizabeth was born in March, 1970. One morning when Diana was approximately three months old, Adron returned home from work and couldn't find Diana. She asked the defendant where Diana was, and he replied that he had beaten her to death and buried her in the backyard. The defendant then threatened Adron and the other two children with a sawed-off shotgun, telling Adron not to report the killing.

Robert James was born in February, 1972. When Robert was about three months old, Adron returned home from work and found him missing. The defendant told Adron he had beaten Robert to death and buried him in the basement.

Earl Gene was born in May, 1973. When Earl was about six months old, Adron returned home from work and found him missing. This time the defendant told Adron that he threw the baby down the basement steps, put him in a tub of water and drowned him, and buried him in the basement. Adron did not go to the police because of continuous threats against her and the remaining two children.

Finally, in February, 1976, Adron left the defendant after he had fired his sawed-off shotgun at her and the two children. Adron returned to Indianapolis to her mother's home. She subsequently told the Indianapolis police about the above events and showed Lafayette police the locations of the

graves. The remains of the three bodies were then recovered by the Lafayette police.

## I.

The defendant first contends that the prosecutor made an improper comment on the defendant's failure to testify. During the closing argument, the state reviewed the testimony of the witnesses. There had been testimony which contradicted some of Adron's statements. There had also been testimony which implied that Adron herself had beaten the children and may have been the one who killed them. The prosecutor devoted a great deal of time to argument about Adron's credibility and Adron's possible motives for not revealing the murders sooner. At the close of this part of his argument, he stated:

> "Okay, Adron is the only person who could get up here, sit in this chair here, the only person brought in that I know of that could come in here and testify as to what happened. How it happened and who did it. Other than possibly the person who did it. But she is the only one who has testified to that and she was our first witness."

The defendant objected to the last statement, but his objection was overruled. The defendant cites *Rowley* v. *State*, (1972) 259 Ind. 209, 285 N.E.2d 646, in support of his position that the prosecutor's argument was an improper comment on the defendant's failure to testify.

It is true that unless it appears that there are witnesses other than the defendant who have denied or contradicted the evidence against him, any direct or indirect reference to the defendant's failure to testify has been strictly regarded as an impingement of his constitutional and statutory rights not to testify. *Jones* v. *State*, (1976) 265 Ind. 447, 355 N.E.2d 402; *Lake* v. *State*, (1976) 264 Ind. 129, 340 N.E.2d 789; *Rowley, supra*.

In this case, it is evident when viewing the prosecutor's entire argument that the questioned remark concerned Adron's credibility and the threats made against her to pre-

vent her from telling about the murders. There had been several defense witnesses who attacked Adron's credibility. But Adron was the only one who had testified about the threats against her. Under these circumstances the prosecutor's comment was not a direct or indirect reference to defendant's failure to testify and did not jeopardize defendant's rights.

## II.

The defendant next contends that the supporting affidavit was defective in two respects. He contends that it was invalid because there was no oath and because no probable cause was shown. His contentions are not supported by the record.

Defendant's basement and backyard were searched for the remains of the three infants pursuant to a search warrant issued by a judge in Lafayette, Indiana. The police officer who obtained the search warrant testified that he had taken a probable cause affidavit and Adron's written statement to the judge. The affidavit has not been preserved in the record and defendant is complaining of deficiencies in Adron's written statement.

Adron gave a written witness statement to police at the police station in Indianapolis. In this statement Adron set out the events surrounding the deaths of the three infants and details about where they were buried. Adron signed this statement under the assertion that, "I have read the above statement and it is true and correct." The statement was further signed by a notary, but there was no actual oath on the statement. Adron then went with the police to the Lafayette police station. At that time the record shows that "the probable cause affidavit was filled out" and that it *plus* Adron's written statement were taken to the judge for the issuance of a search warrant.

No copy of the probable cause affidavit is included in the record presented to this Court. It is clearly established that

it is the duty of an appellant to present an adequate record to an appellate court. *Misenheimer* v. *State,* (1978) 268 Ind. 274, 374 N.E.2d 523; *Schuman* v. *State,* (1976) 265 Ind. 586, 357 N.E.2d 895. Although Adron's written statement which was attached to the search warrant in the record does not contain an oath, this does not prove there was an inadequacy in the probable cause affidavit. We cannot consider an assignment of error where the evidence is not included to support it. The record shows that the judge issued a search warrant on the basis of a probable cause affidavit and Adron's written statement. While the record is regrettably incomplete, under the facts that are preserved therein there is enough evidence to support a valid search warrant.

Defendant's allegations that Adron's written statement did not show probable cause are not supported by the record. The facts related by Adron were all within her personal knowledge. Adron's credibility can be inferred from the fact that the statements go against her interest and that certain facts such as the birthdates of the three infants were checked and were found to be accurate. This is a sufficient basis for probable cause. *Wilson* v. *State,* (1975) 263 Ind. 469, 333 N.E.2d 755; *Madden* v. *State,* (1975) 263 Ind. 223, 328 N.E.2d 727. The information in the statement is not too remote in time to serve as a basis for probable cause where the crime alleged is murder since there is no statute of limitations on murder. Ind. Code § 35-1-3-1 (Burns, 1975). The record reveals sufficient probable cause to support a search warrant.

### III.

The defendant next contends that Adron's testimony regarding purported admissions of the defendant was erroneously admitted since the corpus delicti was not sufficiently established. We do not agree. It is true that in order to avoid the risk of convicting an accused of a crime that did not occur but to which the accused may have

confessed, a confession must be excluded unless the prosecution has established the corpus delicti by evidence independent of the confession. *Cambron* v. *State*, (1975) 262 Ind. 660, 322 N.E.2d 712.

The independent evidence in the case at bar established that there were three human corpses. The evidence relating to the location of the burials, the number of victims, the approximate ages of the murdered infants, and the criminal abuse at the time of death is independent evidence from which an inference may be drawn that a crime was committed in connection with these deaths. This was sufficient independent evidence to established the corpus delicti of the crime charged in this case. *Jones* v. *State*, (1969) 253 Ind. 235, 252 N.E.2d 572; *Brown* v. *State*, (1958) 239 Ind. 184, 154 N.E.2d 720.

## IV.

Defendant filed a motion to dismiss alleging that the informations were defective because the pertinent statutory provisions were not cited and the facts stated in the informations did not constitute a crime. We find that this motion was correctly overruled.

The record reveals that each of the informations did specify Ind. Code § 35-13-4-1 (Burns, 1975) as the pertinent statutory provision, and did specify that the murder was perpetrated "unlawfully, feloniously, purposely, and with premeditated malice." Each information also specified sufficient facts relative to the murders to give the defendant an accurate and complete notice of the charges against him. It is clear from a complete reading of the informations that the defendant was charged with first-degree murder. *Maxwell* v. *State*, (1970) 254 Ind. 490, 260 N.E.2d 787.

For all the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

Givan, C.J., DeBruler, Prentice and Pivarnik, JJ., concur.

NOTE.—Reported at 376 N.E.2d 1117.