Gary Michael NEWBY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 88A04–9711–CR–483.

Court of Appeals of Indiana.

Oct. 30, 1998.

Paul J. Watts, Pete S. Raventos, Watts Law Office, P.C., Spencer, for Appellant–Defendant.

Jeffrey A. Modisett, Atty. Gen., Geoff Davis, Arthur Thaddeus Perry, Deputy Attys. Gen., Indianapolis, for Appellee–Plaintiff.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

On May 6, 1997, Indiana State Police officers and Federal Alcohol, Firearm and Tobacco ("ATF") agents executed a search warrant at the residence of Gary M. Newby. During the search, the officers discovered various drugs, drug paraphernalia, weapons and large amounts of cash. Subsequent to Newby's arrest, the State filed a nineteen-count information charging Newby with both drug and weapons violations. In September of 1997, Newby filed a motion to dismiss the five weapons charges and a motion to suppress the evidence seized during the search of his home. After a hearing, the trial court denied both motions. Newby filed a motion

to certify the trial court's order for interlocutory appeal pursuant to Indiana Appellate Rule 4(B)(6), which we granted, and this appeal ensued. Newby presents multiple issues for review. However, the dispositive issue is whether the trial court erred when it denied Newby's motion to suppress.

We reverse and remand.[1]

## FACTS AND PROCEDURAL HISTORY

On May 5, 1997, Sergeant Myron Wilkerson of the Indiana State Police received information that a cocaine delivery was to occur that night in the IGA grocery store parking lot in Salem, Indiana. As a result, Sergeant Wilkerson, along with other state policemen, conducted surveillance on the lot. At some point, Sergeant Wilkerson and the others observed a vehicle enter the lot and park. The officers approached the vehicle and asked the driver, Steve Calloway, to exit the car. Wilkerson then conducted a pat down search of Calloway, during which he discovered approximately two ounces of cocaine, but no weapons. Wilkerson advised Calloway of his *Miranda* rights and told him that it would be in his best interest if he consented to a search of the vehicle, which belonged to his wife. Calloway eventually signed a consent to search the car, after which Wilkerson asked him if the officers would find any contraband in the vehicle. To avoid having the vehicle damaged during the search, Calloway told Wilkerson that there were drugs in the console. The search of the vehicle revealed the presence of an additional two ounces of cocaine and one-half ounce of marijuana.

Calloway was then asked by Sergeant Wilkerson for the name of the individual from whom he had purchased the drugs; however, Calloway was initially reluctant to answer. Wilkerson proceeded to question Calloway about his family, informed him of the possible penalty for his drug offense if prosecuted and asked him to cooperate by identifying his source. Calloway eventually agreed to cooperate with the officers and to serve as an informant. Calloway then identified his drug supplier as Newby. He further stated, that on the following day, he planned

to deliver $3,000.00 to Newby for the cocaine the officers had discovered in his vehicle and that he also expected to purchase five pounds of marijuana from him. In addition, Calloway described Newby's residence and told the officers that he had seen automatic weapons there in the past.

After receiving this information, Sergeant Wilkerson arranged to have Calloway deliver the $3,000.00 to Newby on May 6, 1997. That morning, Calloway made a telephone call to Newby, which was monitored and recorded. There was no mention of either drugs or money on the audible portions of the tape recording. Later that day, Indiana State Trooper Radford Guinn drove to Newby's residence to verify Calloway's description of and directions to Newby's home. Trooper Guinn then signed an affidavit for a search warrant of Newby's residence.

Next, Trooper Guinn arranged to meet Judge Frank Newkirk, Jr., so that he could review the affidavit for the search warrant. Judge Newkirk signed the warrant but indicated verbally that the warrant should not be executed until after the $3,000.00 had been delivered. Meanwhile, officers searched Calloway, wired him with a tape recording device and gave him $3,000.00 with recorded serial numbers.

Calloway then proceeded to Newby's residence. After discovering that Newby was not there, he reported back to the officers. Calloway returned a second time and was inside Newby's house for approximately forty-five minutes. He then left without the $3,000.00. Calloway did not purchase any drugs.

At some point, Sergeant Wilkerson, who was standing by with the search crew, received word that the money had been delivered. On Wilkerson's command, the search crew of Indiana State Police officers and ATF agents entered Newby's residence and executed the warrant. Pursuant to the search, the officers and agents recovered fully-automatic machine guns, a semi-automatic firearm, approximately one hundred pounds of what appeared to be marijuana, cocaine

---

1. We heard oral argument in this case on September 9, 1998.

and various drug paraphernalia. The officers discovered cash hidden in different areas of the residence and also recovered cash from Newby's person, some of which matched the marked bills the officers had provided Calloway. The officers then arrested Newby, and he gave a statement to the police.[2] The State charged Newby with nineteen counts of various drug and weapons offenses.

## DISCUSSION & DECISION

Newby moved unsuccessfully to suppress all evidence seized from his residence as a result of the search. He now challenges the trial court's denial of that motion.

As an initial matter, we address an issue that the parties characterize as an issue of first impression in this State. In particular, both parties allege that the search warrant in this case was an "anticipatory search warrant" and ask that we determine the validity of such warrants in Indiana.

"An anticipatory search warrant is a search warrant based upon probable cause to believe that at some future time, but not currently, the items sought will be located at a particular place." 79 C.J.S. *Searches and Seizures* § 172, at 260. Article I, § 11 of the Indiana Constitution[3] and Indiana Code §§ 35–33–5–1and –2 require that probable cause exist before a warrant shall issue. Further, Indiana Code § 35–33–5–2(a)(2)(A) provides that a magistrate may not issue a warrant unless the affiant shows that he has good cause to believe that "the things as are to be searched for *are* there concealed." (emphasis added).

■■■■ While a warrant may contain conditions precedent which must occur prior to its execution, a magistrate may not issue a warrant that is not supported by probable cause when it is issued. Stated differently, absent probable cause at the time the warrant is issued, the occurrence or nonoccurrence of any conditions precedent is irrelevant. If execution of the warrant is made subject to conditions precedent, those conditions should appear within the four corners of the warrant.[4] In any event, a warrant that relies on the occurrence of a future event to supply the requisite probable cause is deficient on its face. *See* IND.CODE § 35–33–5–2(a)(2)(A). Consequently, we must first address whether the affidavit for search warrant was supported by probable cause.

### A. Affidavit for Search Warrant

Newby maintains that the issuing magistrate did not have a substantial basis for concluding that the affidavit established probable cause. Specifically, Newby argues that Trooper Guinn's affidavit, which relied on hearsay statements, failed to establish Calloway's credibility. He argues further that the totality of the circumstances did not corroborate the hearsay.[5] We must agree.

■■■■ In determining whether to issue a search warrant, " '[t]he task of the issuing magistrate is simply to make a practical,

---

2. Newby argued in his motion to suppress that the statement he gave to the police after his arrest was inadmissible as fruit of the poison tree. However, he failed to present cogent argument on that issue on appeal. Rather, Newby briefly makes reference to the alleged inadmissibility of his statement in the "Conclusion" portion of his brief. Accordingly, we decline to address that claim. *See Bieghler v. State,* 690 N.E.2d 188, 195 (Ind.1997) (failure to present cogent argument results in waiver).

3. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." IND. CONST. art. I, § 11.

4. The parties agree that when the trial judge issued the search warrant, he stated that the warrant should not be executed until Calloway had delivered the $3,000.00 to Newby. However, this condition did not appear within the text of the warrant. We caution that reliance on a "verbal rider" which attaches a condition precedent to the execution of a warrant is a dangerous procedure that, in any given case, could prejudice either the State or the individual upon whom the warrant is served.

5. Newby's argument is based on both the Fourth Amendment of the United States Constitution and Indiana Code § 35–33–5–2(b). Although Newby recognizes that probable cause is required under Article I, § 11 of the Indiana Constitution, he does not assert a claim based on that provision.

common sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Jaggers v. State*, 687 N.E.2d 180, 181 (Ind.1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983)). When reviewing a magistrate's decision to issue a warrant, the reviewing court applies a deferential standard. *Lloyd v. State*, 677 N.E.2d 71, 73 (Ind.Ct.App.1997), *trans. denied.* We will affirm the magistrate's decision to issue the warrant if the magistrate had a "substantial basis" for concluding that probable cause to search existed. *Id.* "Substantial basis" requires us to focus on whether the reasonable inferences drawn from the totality of the evidence support the probable cause determination. *Jaggers*, 687 N.E.2d at 181–82.

■ The United States Supreme Court has held that uncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant. *Gates*, 462 U.S. at 227, 103 S.Ct. at 2326, 76 L.Ed.2d at 542. The federal test for ensuring the reliability of a hearsay statement in a probable cause determination allows the use of hearsay only if the totality of the circumstances corroborates the hearsay. *Lloyd*, 677 N.E.2d at 74 (citing *Gates*, 462 U.S. at 230–31, 103 S.Ct. at 2328–29, 76 L.Ed.2d at 543–44). The reliability of hearsay can be established in a number of ways, including where: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted. *Jaggers*, 687 N.E.2d at 182.

Further, Indiana Code § 35–33–5–2(b) provides:

When based on hearsay, the affidavit must either:

(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

In this case, Trooper Guinn's affidavit was based on "hearsay within hearsay," i.e., the officer seeking the warrant was reporting what Calloway had allegedly told Sergeant Wilkerson. *See* Ind. Evidence Rule 801(c) (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted."). Specifically, Trooper Guinn's affidavit stated in part:

2. That in the course of his duties as such your affiant received information from Sgt. Myron Wilkerson of the Indiana State Police that a confidential informant had stated to Wilkerson that he had observed and obtained cocaine from Gary Newby at his residence within the past 72 hours. Wilkerson also advised your affiant that the confidential informant had observed fully automatic weapons at the Newby residence within the past 72 hours and had received marijuana from Newby within the past 72 hours.

3. Wilkerson further advised your affiant that he believed the confidential informant to be a credible and reliable witness *because the informant had advised him where drugs were located, and that drugs had been located in that location,* that the confidential informant had described to Wilkerson the Newby residence, the location of the residence and the vehicles located at the residence. The description, location of the Newby residence and description of the vehicles given by the confidential informant [were] corroborated by your affiant on May 6, 1997.

4. That your affiant anticipates that on May 6, 1997, officers of the Indiana State Police narcotics unit with the confidential informant will make a controlled delivery of $3,000 cash to Gary Newby for the payment of a previous narcotics purchase of approximately two ounces of cocaine which the confidential informant stated occurred on May 5, 1997. Two ounces of

cocaine were located in the confidential informant's possession on May 5, 1997.

* * *

8. That the confidential informant has also stated that on every purchase he has made from Newby, Newby has had in his possession a .45 Winchester mag semi-automatic black pistol or a 9 mm Baby Desert Eagle, and that the confidential informant has observed Newby firing a fully-automatic weapon which appeared to be a MAC 10 with two thirty round magazines taped together in the past.

9. That Sgt. Myron Wilkerson has in the past furnished information to your affiant that has proven reliable and credible and led to the arrest and conviction of several individuals and to the seizure of controlled substances and evidence of crimes.

* * *

11. That the confidential informant was in possession of a small quantity of marijuana, which he had obtained from the Newby residence within the past 72 hours, and he further advised that he was to make a five (5) pound purchase of marijuana from Newby on the evening of May 6, 1997. (emphasis added).

*1. Statements Against Penal Interest*

█ The State directs us to *Houser v. State*, 678 N.E.2d 95 (Ind.1997), in support of its argument that the affidavit establishes Calloway's credibility. In that case, our supreme court recently stated that declarations against penal interest can furnish sufficient basis for establishing the credibility of an informant. *Id.* at 100. A statement against penal interest must have "so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." *Jervis v. State*, 679 N.E.2d 875, 878 (Ind. 1997) (citing Ind. Evidence Rule 804(b)).

█ In this case, paragraph three specifically addressed Calloway's credibility. In particular, the affidavit stated that Sergeant Wilkerson believed Calloway to be credible and reliable because he had advised Wilkerson where drugs were located and drugs had been located there. However, the issuing magistrate could not have reasonably inferred from that statement, as alleged in the affidavit, that Calloway had implicated himself in criminal activity. Further, when Calloway gave this information, Sergeant Wilkerson had already discovered drugs on Calloway, and Calloway had consented to a search of his wife's vehicle. The discovery of additional drugs was both imminent and inevitable. Calloway merely told the officers where the drugs would be found to avoid having the vehicle damaged during the search. This statement made by Calloway is not a statement against penal interest.

At oral argument, the State asserted that the affidavit contained other statements against penal interest sufficient to establish Calloway's credibility. Specifically, the affidavit stated that Calloway admitted to Sergeant Wilkerson that: (1) he had obtained cocaine and marijuana from Newby within the past 72 hours, (2) he was to deliver $3,000.00 as payment for the cocaine the police recovered from him and (3) he expected to purchase five pounds of marijuana from Newby on the following day.

In *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), the United States Supreme Court addressed whether statements against penal interest can be used to establish the credibility of a confidential informant for purposes of establishing probable cause. In that case, a federal tax investigator's search warrant affidavit stated: (1) the defendant had a reputation known by the affiant as being involved in the trafficking of "nontaxpaid distilled spirits;" (2) the affiant had received numerous tips from various individuals regarding this activity; (3) the affiant had discovered a "stash of illicit whiskey" in an abandoned house over which the defendant had control; and (4) a "prudent" confidential informant had told the affiant that he had purchased whiskey from the defendant for over a period of two years and had made a purchase from the defendant in the defendant's home within the past two weeks. *Harris*, 403 U.S. at 575, 91 S.Ct. at 2078, 29 L.Ed.2d at 729. In holding that

there was a substantial basis for believing that the informant's tip was truthful, the plurality concluded, in part, that admissions of crimes "carry their own indicia of credibility" that are sufficient to support a finding of probable cause for the issuance of a search warrant.[6] *Id.* at 583, 91 S.Ct. at 2082, 29 L.Ed.2d at 734.

However, in his dissent, Justice Harlan expressed concerns about the plurality's rationale that an informant's declaration against interest "tends to indicate" that the substance of the informant's statements is accurate. *Id.,* 403 U.S. at 595, 91 S.Ct. at 2087, 29 L.Ed.2d at 740 (Harlan, J., dissenting). In part, Justice Harlan wrote:

> But where the declarant is also a police informant it seems at least plausible to assume, without further enlightenment either as to the Government's general practice or as to the particular facts of this case, that the declarant-confidant at least believed he would receive absolution from prosecution for his confessed crime in return for his statement. Thus, some showing that the informant did not possess illusions of immunity might well be essential.

*Id.* (citations and parentheticals omitted).

 In this case, Sergeant Wilkerson discovered drugs on Calloway and then told him that if he agreed to cooperate and name his source, "chances are that [he would not] be prosecuted." In response, Calloway told Sergeant Wilkerson that he had purchased the cocaine and marijuana seized from his person and vehicle from Newby, that he owed Newby $3,000.00 for the two ounces of cocaine recovered from his vehicle and that he expected to purchase five pounds of marijuana from Newby the following night. These statements are not statements against penal interest.

First, Calloway had already been caught with drugs in his possession, and his decision to reveal his source to the police did not subject him to any additional criminal liability. Likewise, neither Calloway's statement that he was indebted to Newby for the co-

caine recovered from the vehicle nor his statement that he intended to purchase other drugs in the future from Newby subjected him to any more criminal liability. He made these statements only after he had been informed by Wilkerson that his cooperation might lessen the chances of his own prosecution. Under these circumstances, Calloway's statements helped him rather than hurt him. By implicating Newby, Calloway was able to shift the focus of criminal activity from himself, to Newby's alleged drug activity.

Even assuming Calloway's statements were against his penal interest, this case is distinguishable from other Indiana cases in which such statements have been considered to establish informant credibility. *See Houser,* 678 N.E.2d at 100; *Ross v. State,* 268 Ind. 471, 476, 376 N.E.2d 1117, 1119 (1978), *cert. denied,* 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979); *Nash v. State,* 433 N.E.2d 807, 809–10 (Ind.Ct.App.1982). In those cases, there was independent corroboration of facts relayed by the informant. For example, in *Houser,* 678 N.E.2d at 100, the police officers who sought the search warrant conducted an independent investigation of the crime scene and observed facts relayed to them by the informant that could be known only to someone involved in the crime. In *Ross,* 268 Ind. at 476, 376 N.E.2d at 1119, our supreme court determined that the informant's statements to police about how her children's father had beaten the children to death and then buried them in the back yard combined with police corroboration of facts relayed by the informant, including the birthdates of the children, were sufficient to establish the informant's credibility. Finally, in *Nash,* 433 N.E.2d at 810, a juvenile informant admitted he had committed a burglary which implicated the defendant and the facts surrounding the burglary were independently corroborated by the victim.

In this case, Sergeant Wilkerson received information about Newby from Calloway, an

---

**6.** Despite the plurality's reliance on the informant's admissions, Justice Harlan noted that the Government did not raise that rationale as part of its argument to the Court. *See Harris,* 403 U.S. at 594, 91 S.Ct. at 2087, 29 L.Ed.2d at 740 (Harlan, J., dissenting).

individual whom he had not met until May 5, 1997. Neither Sergeant Wilkerson nor Trooper Guinn corroborated facts relayed to them by Calloway that connected Newby to illegal activity.[7] *See Jaggers,* 687 N.E.2d at 184 (uncorroborated hearsay statements not sufficient to establish anonymous informant's credibility). Unlike the cases discussed above, the affidavit contained no other facts corroborating Calloway's statements which, standing alone, were insufficient to convert a stranger into a credible informant. *See Gates,* 462 U.S. at 227, 103 S.Ct. at 2326, 76 L.Ed.2d at 542 (uncorroborated hearsay from a source whose credibility is unknown in itself cannot support a finding of probable cause to issue a warrant).

■ Still, the State maintains that Calloway's credibility was established by his description of Newby's residence, its location and the vehicles he had observed there and that Guinn later corroborated that information. We disagree. The confirmation of "easily obtained facts and conditions existing at the time of the tip" is insufficient to establish an informant's credibility. *Gates,* 462 U.S. at 245, 103 S.Ct. at 2335, 76 L.Ed.2d at 552; *Bradley v. State,* 609 N.E.2d 420, 423 (Ind.1993). Here, the facts describing Newby's residence were easily observable and within the public domain. *See Jaggers,* 687 N.E.2d at 184 (anonymous informant's credibility not established when police officers corroborated location of defendant's residence and marijuana patches growing nearby). Anyone who knew where Newby lived could have reported these facts to the police. Moreover, Calloway's description of Newby's home did not indicate illegal activity. Thus, we conclude that Calloway's credibility was not established by Guinn's verification of the description and location of Newby's residence.

### 2. Totality of the Circumstances

■ The State also contends that the totality of the circumstances corroborated the hearsay statements. For example, the State asserts that Calloway's ability to give a specific description of the guns he observed in Newby's possession demonstrates his credibility. While a claim of firsthand observation may ordinarily boost the credibility of the assertion, Calloway's statement of firsthand knowledge could just as easily have been fabricated to make his other claims appear more credible. *See Jaggers,* 687 N.E.2d at 184. Absent corroboration, Calloway's claims regarding the presence of guns, no matter how specific, amount to little more than an anonymous tip. *Cf. Edwards v. State,* 682 N.E.2d 800, 804–805 (Ind.Ct.App. 1997) (warrant properly issued where police conducted independent surveillance in order to corroborate informant's tip that defendant was trafficking drugs from his home), *trans. denied.*

■ The State further argues that Trooper Guinn's statement that the street value of cocaine is $1,500.00 per ounce corroborated Calloway's claim that he owed Newby $3,000.00 for the two ounces of cocaine recovered from his vehicle. The fact that Calloway knew the street value of cocaine did not connect Newby either to the cocaine discovered in Calloway's vehicle or to the alleged $3,000.00 debt. Finally, the State contends that the affidavit foretold an event that did take place, the delivery of the $3,000.00. However, no unlawful transaction occurred. There was no *quid pro quo* for the cash. The unilateral delivery of cash, without more, does not support an inference that Newby was engaging in criminal conduct. Cash is not contraband unless it can be connected with some illegal activity.[8] While the

7. The officers did make one attempt to corroborate Calloway's hearsay statements. Specifically, the officers supervised a phone call that Calloway made to Newby for the purpose of setting up the "controlled delivery" of the $3,000.00. According to the audible portions of the tape, however, Calloway and Newby did not discuss either drugs or money during that conversation and, thus, the phone call also failed to corroborate Calloway's statements. Trooper Guinn did not include this information in his affidavit for the search warrant.

8. The affidavit described the anticipated delivery of cash to Newby's residence on May 6, 1997, as a "controlled delivery." The use of this term is incorrect as it connotes the delivery of an unlawful item or substance. *Cf. Santana v. State,* 679 N.E.2d 1355, 1359 (Ind.Ct.App.1997) ("controlled delivery" referred to undercover delivery

delivery of $3,000.00 in cash may raise a suspicion, it does not approach probable cause. In any event, as we discussed earlier, the occurrence of a condition precedent alone cannot form a sufficient basis for probable cause.

In sum, the affidavit for the search warrant did not contain facts sufficient to establish Calloway's credibility. Nor did the officers corroborate any information relayed to them by Calloway that connected Newby with alleged unlawful activity. Considering the totality of the circumstances, we conclude that the determination of probable cause in this case lacked a substantial basis and that the search of Newby's residence was unlawful.[9]

### B. Good Faith Exception

■■■■ Under the exclusionary rule, evidence obtained through an illegal search and seizure is inadmissible at trial. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Callender v. State*, 193 Ind. 91, 138 N.E. 817 (1923). However, the exclusionary rule does not require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in objective good faith. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677, 698 (1984); *Jaggers*, 687 N.E.2d at 184. The good faith exception has been codified at Indiana Code § 35–37–4–5(a), which provides that "the court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the evidence was obtained by a law enforcement officer in good faith."

### 1. Constitutionality of IND.CODE § 35–37–4–5(a)

Newby challenges the constitutionality of Indiana's good faith exception. Specifically, Newby contends that Indiana Code § 35–37–4–5(a) violates Article I, § 11 of the Indiana Constitution. We do not agree.

■■ In *Mers v. State*, 482 N.E.2d 778, 783 (Ind.Ct.App.1985), this court stated:

> Because the Indiana exclusionary rule has historical ties to the federal rule, and because Article I, Section 11 of the Indiana Constitution contains substantially identical language as the fourth amendment, we fail to find any compelling reason for rejecting the *Leon* good faith exception in Indiana, at least until such time as experience convinces us that the exception is unworkable or subject to abuse.

(citations omitted). In addition, Indiana's statutory good faith exception has been recognized repeatedly by the courts of this state. *See, e.g., Lloyd v. State*, 677 N.E.2d 71, 74 (Ind.Ct.App.1997), *trans. denied*; *State v. Johnson*, 669 N.E.2d 411, 412 (Ind. Ct.App.1996), *trans. denied*; *Cutter v. State*, 646 N.E.2d 704, 714 (Ind.Ct.App.1995), *trans. denied*. Because Newby has provided us with no basis for holding that Indiana's statutory good faith exception violates Article I, § 11 of the Indiana Constitution, we conclude that the exception passes state constitutional muster.

### 2. Applicability of the Good Faith Exception

The State contends that even if probable cause were lacking, the evidence seized during the search is admissible under the good faith exception. We cannot agree.

■■■ The good faith exception cannot be so broadly construed as to obliterate the exclusionary rule. *Dolliver v. State*, 598 N.E.2d 525, 529 (Ind.1992). Accordingly, certain police conduct does not qualify for this exception, including where: (1) the magistrate is misled by information in the affidavit that the affiant either knew was false or would have known was false except for his reckless disregard for the truth, or (2) the warrant was based on an affidavit so lacking in indicia of probable cause as to render belief in its existence unreasonable. *Jaggers*,

---

of marijuana, a controlled substance); *Jernigan v. State*, 612 N.E.2d 609, 612 (Ind.Ct.App.1993) (involved "controlled delivery" of cocaine to defendant), *trans. denied*.

**9.** As stated earlier, a magistrate may not issue a search warrant that is not supported by probable cause. Having concluded that the warrant at issue in this case lacked probable cause, we need not decide the issue presented by the parties regarding anticipatory search warrants.

687 N.E.2d at 184 (citing *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699); *Johnson,* 669 N.E.2d at 412.

■ Here, information contained in Trooper Guinn's affidavit was misleading. As we have previously noted, paragraph three implies that Sergeant Wilkerson had used Calloway as an informant in the past when, in fact, he had not. Calloway was a stranger. While detained, he merely gave consent to search his wife's vehicle and then indicated where drugs were hidden to avoid possible damage to it. This mischaracterization of Calloway as a credible and reliable informant was critical in that it was the only representation in the affidavit that went directly to Calloway's credibility.

Nor did the affidavit fully disclose the context in which Calloway gave the statements to the police. Specifically, the issuing magistrate did not know from the facts contained in the affidavit that Calloway provided such information only after having been apprehended, searched and questioned by the police. Neither did the affidavit inform the magistrate that Wilkerson had warned Calloway that if he did not cooperate by naming his source, he would be prosecuted for drug violations. These circumstances, which disclosed Calloway's motivation for naming his source, were critical to an independent magistrate's probable cause determination.

Further, paragraph eleven of the affidavit represented to the magistrate that Calloway planned to purchase five pounds of marijuana from Newby when he delivered the $3,000.00. That "buy" never occurred.[10] In paragraph nine of the affidavit, Trooper Guinn stated that Sergeant Wilkerson had provided credible and reliable information in the past which led to the ultimate conviction of several individuals. Indiana Code § 35–33–5–2(b)(1) requires that "the credibility of the source and of each of the declarants of the hearsay" be established. We assume that Wilkerson, as a law enforcement officer, would provide credible information. However, while the affidavit established Wilkerson's credibility, it failed to show the credibility of the source, Calloway.

There was no serious effort to develop independent data to corroborate critical facts showing that Calloway's allegations were reliable. *See Jaggers,* 687 N.E.2d at 185. Rather than taking care to establish Calloway's credibility and to corroborate the information relayed to them by Calloway, the officers in this case sought a warrant prematurely. *See id.,* 687 N.E.2d at 186 ("*Leon's* rationale is not advanced by effectively allowing the State to claim good faith reliance on a warrant after a less than faithful effort to establish probable cause to obtain it."). Moreover, the same officers that provided and presented the misleading information in the affidavit actively participated in the subsequent search of Newby's residence. We conclude that the search was not executed in objective good faith reliance on the warrant.

In the administration of justice, it is imperative that judicial officers have complete information when deciding whether there is probable cause to issue a search warrant. This is particularly true when the decision is based upon hearsay testimony and the totality of the circumstances. *See* IND.CODE § 35–33–5–2(b). "Totality of the circumstances" means just that, not information that has been selected with the goal of making the judicial finding of probable cause more likely. Nor does "totality of the circumstances" allow the omission of relevant information that could affect an independent

---

10. In denying Newby's motion to suppress, the trial court stated that Calloway's purchase of five pounds of marijuana from Newby "was not at all a condition precedent." However, the court stated that the delivery of the $3,000.00 to Newby was a condition precedent and that "the condition had been met" before the officers initiated the search of Newby's home. As discussed earlier, the cash alone was not probative. The unilateral delivery of cash does not in itself support an inference of criminal activity. Moreover, while the court stated that the delivery of the cash was a condition precedent to the warrant's execution, the court did not indicate whether it had found probable cause based on the facts contained in the affidavit absent that delivery. We have already concluded that before a warrant can issue, probable cause must exist notwithstanding any conditions precedent. *See* IND.CODE § 35–33–5–2(a)(2)(A). Thus, the trial court erred to the extent, if any, that it relied on the "controlled delivery" of the cash to establish probable cause to search Newby's home.

judicial determination. As our supreme court in *Jaggers* stated:

> In applying *Leon,* our cases have stressed the importance of accurately presenting *all relevant information* to the magistrate. Only then can the magistrate make the neutral and detached determination the Fourth Amendment requires of whether probable cause exists.

*Jaggers,* 687 N.E.2d at 185 (citations omitted) (emphasis added).

Here, law enforcement authorities recovered a motherlode of contraband from Newby's residence. Unfortunately, the evidence was seized pursuant to an unlawful warrant and is inadmissible. That is the price we must pay to assure that millions of law abiding Indiana residents remain secure from unreasonable searches and seizures. As Justice Oliver Wendell Holmes wrote in 1927, "I think it a less evil that some criminals should escape than that the Government should play an ignoble part." *Olmstead v. United States,* 277 U.S. 438, 470, 48 S.Ct. 564, 575, 72 L.Ed. 944, 953 (1928) (Holmes, J., dissenting). We are, therefore, constrained to hold that all evidence obtained as a result of the illegal search is inadmissible at trial, including the cash, drug paraphernalia, drugs and weapons.[11]

## CONCLUSION

While we acknowledge our deferential standard of review, we conclude that the determination of probable cause in this case lacked a substantial basis because the probable cause affidavit did not establish the credibility of the informant. We further conclude that the good faith exception does not apply because: (1) the affidavit contained a critical and misleading representation that the informant had provided reliable information in the past and (2) the affidavit did not contain all of the relevant information and circumstances necessary for an independent, neutral and detached judicial determination of

probable cause. Thus, the trial court erred when it denied Newby's motion to suppress. Reversed and remanded.

BAILEY and RILEY, JJ., concur.

11. Newby also challenges the constitutionality of the statutes on which his five weapons charges are based. Specifically, Newby maintains that those statutes are void for vagueness. Because we have already determined that the weapons seized from Newby's residence are not admissible and there is no other evidence before us upon which the State may base the weapons charges, we save Newby's constitutional argument for another date.