**Robert LEICHT, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 3402–0210–CR–840.

Court of Appeals of Indiana.

Oct. 7, 2003.

Publication Ordered Nov. 6, 2003.

Transfer Denied Jan. 8, 2004.

Joshua E. Leicht, Leicht Law Office, Kokomo, for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, for Appellee.

**OPINION**

DARDEN, J.

### STATEMENT OF THE CASE

Robert Leicht brings this interlocutory appeal of the trial court's denial of his motion to suppress.

We affirm.

### ISSUE

Whether the trial court erred in denying Leicht's motion to suppress evidence because the State failed to establish probable cause to support the issuance of the search warrant.

### FACTS

On February 12, 2002, two detectives from the Kokomo Police Department went to the Carpenter residence to investigate the possible involvement of Lindsay Carpenter with drugs. They knocked, Lindsay answered the door, and the detectives smelled the odor of burnt marijuana. Lindsay's mother, Bonnie Carpenter, then came to the door and allowed the detectives to enter her home. Lindsay told them she had been smoking marijuana. Detective Brown asked Bonnie if she would allow a search of the residence, and Bonnie declined. The detectives obtained a search warrant and returned.

At that point, Bonnie directed Detective Brown to "a sizable quantity of marijuana" in her bedroom as well as "over eight hundred dollars" in cash and drug paraphernalia. (App.39). Bonnie was then questioned by the detectives at her residence and at the police station. At the station, she also provided a sworn statement.

Detective Rood, who was present for the questioning of Bonnie at the police station, prepared an affidavit for probable cause to obtain a search warrant. The affidavit specified that two officers had smelled the odor of burnt marijuana at the Carpenter residence and obtained a search warrant for the residence. The affidavit also contained the following facts. When the warrant was served, Bonnie "advised that she did have marijuana in the residence and money related to the sale of illegal drugs"; gave them "a bag containing individually wrapped plastic bags" that appeared to

contain marijuana; and "stated she wanted to cooperate and provide information to us about the person she gets the marijuana from." (App.66). Bonnie identified Leicht as the person who provided her the marijuana to sell, and she provided the location and description of his residence. Bonnie described an extensive history of her dealings with Leicht, from initially buying it by the ounce to "getting the marijuana by the pound and selling it for [Leicht]," with details about two levels of quantity and corresponding prices—$900 or $6,100 per pound. (App.67). Bonnie admitted she had even delivered marijuana from Leicht to a Derrick Hill "the night he was killed." *Id.* Bonnie described being present at Leicht's residence "approximately four months ago" and witnessing the delivery of "crates" that contained twenty-pound "bricks" of marijuana, and how she "made two thousand dollars from just delivering" one of the bricks. *Id.* Bonnie explained that when she was "close to being out" of marijuana to sell, she would "call [Leicht] and he would either bring her a pound of marijuana to sale [sic] or she would go to his residence and get it," and that just two days prior to her encounter with the police, Leicht had brought her "one pound of marijuana to sell." *Id.*

The trial court found "that probable cause [was] stated" in the affidavit and issued a search warrant for Leicht's residence and property that same day, February 12, 2002. (App.60). On April 26, 2002, the State filed a probable cause affidavit[1] for a warrant to arrest Leicht on charges that he had committed the offenses of conspiracy to commit dealing in marijuana; aiding, inducing or causing dealing in marijuana; and dealing in marijuana, all class C felonies. After a hearing, the trial court found probable cause to charge Leicht and issued a warrant for his arrest.

On July 11, 2002, Leicht filed a motion to suppress the evidence "seized from [his] residence on February 12, 2002," alleging that the probable cause affidavit submitted for that search warrant "consisted almost entirely of uncorroborated hearsay from" Bonnie and "failed to establish the existence of probable cause sufficient to warrant the issuance of the search warrant." (App.27). The trial court heard evidence at a hearing on September 4, 2002. Bonnie testified that after the detectives returned to her residence with the search warrant, she gave them a sizeable quantity of marijuana from the safe in her bedroom and some cash. She further testified that during her questioning by the police, she was simply "talked to," there "was no pressure," she did not feel threatened, and her testimony to them was "freely and voluntarily given." (App.40, 42). Detective Rood testified of his personal knowledge that Derrick Hill, a recent homicide victim, had been "a major dealer" who had possessed several pounds of marijuana near the time of his death. (App.42).

The trial court concluded that the affidavit established probable cause because it gave the "basis of [Bonnie's] knowledge," in that Bonnie had been found in possession of a substantial quantity of marijuana, "was trafficking with [Leicht]," "gave statements against penal interest in connection with sale to the man who was eventually murdered," "told about past

---

1. Attached to the affidavit was the statement of Bonnie, who swore "under the pains and penalties of perjury" that she had been selling drugs for Leicht, who "fronted" her the cost of the marijuana; that she had been so engaged for "months," originally obtaining "like five (5) pounds a week until the very end when [she] got twenty (20) pounds"; that she would "either go to his house and pick it up or he [would] bring[ ] it to [her] house"; and that just two days prior to her encounter with the police, Leicht had brought her the marijuana she had in her possession to sell. (App.25, 21, 22).

conduct which the police did not have evidence on or did not have evidence in hand for which she could be investigated and possibly charged," and that she had "an ongoing relationship" with Leicht. (App.61).

### DECISION

■■■ The federal and state constitutions guarantee that a court will not issue a search warrant without probable cause. *Overstreet v. State*, 783 N.E.2d 1140, 1157 (Ind.2003) (citing U.S. CONST. Amend IV; Ind. Const. Art. I, § 11). Probable cause to search the premises is established when a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime. *Id.* (citing *Esquerdo v. State*, 640 N.E.2d 1023, 1029 (Ind.1994)). The decision to issue the warrant should be based on the facts stated in the affidavit and the rational and reasonable inferences drawn therefrom. *Id.* The duty of a reviewing court is "simply to ensure that the magistrate had a 'substantial basis' for concluding that probable cause existed." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and *Figert v. State*, 686 N.E.2d 827, 830 (Ind.1997)). "Substantial basis" requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Id.*

■■■ Indiana Code § 35–33–5–2(b) has effectively codified Fourth Amendment doctrine on the use of informants to establish probable cause. *Jaggers v. State*, 687 N.E.2d 180, 183 (Ind.1997). Specifically, the statute provides that when based on hearsay, the probable cause affidavit must either

(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or (2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

I.C. § 35–33–5–2(b). Thus, the hearsay "must exhibit some hallmarks of reliability." *Jaggers*, 687 N.E.2d at 182.

■■■ The trustworthiness of hearsay for purposes of proving probable cause can be established in a number of ways, including the showing of "some basis for the informant's knowledge." *Id.* (citing *Gates*, 462 U.S. at 232, 103 S.Ct. 2317). The hearsay statements of Bonnie in the probable cause affidavit showed that her knowledge was based on her personal involvement in selling marijuana provided by Leicht. The trial court found that her statements indicated a long-term relationship with Leicht, that Leicht provided marijuana to her and allowed her to pay for it after she sold it to others, and that the price she would pay Leicht for the marijuana varied based upon its quality. As the trial court noted, this indicated "some basis for" Bonnie's knowledge, which would tend to show the trustworthiness of the statements. *See Jaggers*, 687 N.E.2d at 182.

Further, the amount of detail provided by the informant may allow the magistrate to "reasonably infer that the informant had gained his information in a reliable way." *Spinelli v. U.S.*, 393 U.S. 410, 417, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). There is a great deal of detail in the information cited in the affidavit as having been provided by Bonnie. Specifically, statements indicate the price and payment arrangements between her and Leicht, their delivery arrangements, the date and time of his most recent delivery to her, how she originally

met Leicht and the frequency of their contact, and the detailed account of the truck's delivery of crates containing bricks of marijuana to Leicht's residence.

■ Further, many of the statements that the affidavit attributes to Bonnie were statements against interest. A statement against the declarant's penal interest is one that so far tends to subject the declarant to civil or criminal liability that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. *Jervis v. State*, 679 N.E.2d 875, 878 (Ind.1997) (citing Ind. Evidence Rule 804(b)).

In *Nash v. State*, 433 N.E.2d 807, 810 (Ind.Ct.App.1982), we held that statements against the declarant's penal interest "constitute an indicia of credibility which may be used in ascertaining the credibility of an informant whose information provides the basis of an affidavit" for a search warrant. There, the declarant's statement "admitted the commission of a burglary," and "the fact of the burglary was corroborated by the victim." *Id.* We found this to be "sufficient foundation to establish" the declarant's credibility. *Id.* Similarly, in *Phillips v. State*, 514 N.E.2d 1073, 1075–76 (Ind.1987), the fact that the declarant "implicated himself in the crimes and gave information that could have been provided only by one who was involved in the crimes" was sufficient to establish the credibility of the declarant whose statements were used in the probable cause affidavit for a search warrant.

Subsequent to *Phillips*, our supreme court squarely held that "[d]eclarations against penal interest can furnish sufficient basis for establishing the credibility of an informant within the meaning of IND. CODE § 35–33–5–2(b)(1)." *Houser v. State*, 678 N.E.2d 95, 100 (Ind.1997). In *Houser*, because the declarant was incriminated by his statements that "suggested a conspiracy between" the declarant and the subject of the search warrant, the declarant was found to be "a credible source." *Id.*

Just as in *Nash, Phillips,* and *Houser,* Bonnie implicated herself in the commission of dealing marijuana as well as conspiracy to deal marijuana offenses. Under the law, this established a recognized basis for concluding that Bonnie was a credible source and that the information she provided was reliable.

With appropriate deference being given to the judge who issued the search warrant, we conclude that there was a substantial basis upon which to conclude that there was probable cause to believe that evidence of trafficking in marijuana might be recovered at Leicht's residence and property.[2] Accordingly, the trial court did

---

2. We are aware of *Newby v. State*, 701 N.E.2d 593 (Ind.Ct.App.1998), upon which the dissent relies. However, we believe the facts and circumstances of *Newby* are readily distinguishable from those in the instant case. The panel of judges in *Newby* found that the affidavit for probable cause therein was based upon "hearsay within hearsay." 701 N.E.2d at 598. Specifically, the affiant-police officer who obtained the search warrant in *Newby* based his assertions in the probable cause affidavit upon information from statements allegedly made by a so-called "confidential informant" to another police officer and whose credibility and reliability of information were not seriously corroborated by either officer. *Id.* As noted in FACTS, there was a plethora of information and detailed facts presented in Officer Rood's probable cause affidavit for the search warrant. Further, affiant Rood was present for and witnessed Bonnie's signing of a statement she made "under the pains and penalties of perjury" providing the facts to which Rood swore in the affidavit. Thus, we believe the affidavit provided facts upon which a neutral magistrate could safely rely in issuing a search warrant. We further find the totality of the circumstances presented did warrant a neutral and detached magistrate's belief that

not err in denying Leicht's motion to suppress.

We affirm.

SULLIVAN, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

I respectfully dissent from the majority's holding that "there was a substantial basis upon which to conclude that there was probable cause to believe that evidence of trafficking in marijuana might be recovered at Leicht's residence and property." Op. p. ——. Specifically, I believe that inasmuch as Bonnie was already apprehended for possession of marijuana, any statements she made regarding Leicht were not against her penal interest.

I would note that *Newby v. State,* 701 N.E.2d 593 (Ind.Ct.App.1998) compels a different outcome than that advanced by the majority. In that case, Steve Calloway was arrested for possession of marijuana and cocaine. Calloway told police officers that Newby was his source for drugs and agreed to work as an informant. Calloway gave police officers Newby's address, and the officers obtained a search warrant. Drugs were found at Newby's residence, as Calloway had contended, and he was arrested. Newby then filed a motion to suppress, alleging that the affidavit used to obtain the search warrant lacked probable cause. The trial court overruled Newby's motion and an interlocutory appeal ensued. The State argued that Calloway's declaration regarding his purchasing drugs from Newby constituted statements against Calloway's penal interest, thereby making them credible. We reversed, holding that Calloway was already "caught with drugs

in his possession, and his decision to reveal his source to the police did not subject him to any additional criminal liability." *Id.* at 600. Moreover, we noted that neither of the police officers to whom Calloway spoke "corroborated facts relayed to them by Calloway that connected Newby to illegal activity" through personal observation or other techniques. *Id.* at 601.

Similar to the circumstances in *Newby,* Bonnie told police about her drug supplier only after the police officers found marijuana in her home. Bonnie's decision to divulge her source did not subject her to enhanced criminal liability inasmuch as she was already under arrest for possession of marijuana. *See id.* at 600. The State claims that Bonnie's statements subjected her to criminal prosecution for conspiracy to deal in marijuana, but I maintain that our double jeopardy jurisprudence would not allow convictions for both possession of and conspiracy to deal in the same "crop" of marijuana found in her home. *Guyton v. State,* 771 N.E.2d 1141, 1143 (Ind.2002) (citing *Richardson,* 717 N.E.2d at 55 (Sullivan, J., concurring)) (holding that Indiana Constitution's double jeopardy prohibits "conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished."). Moreover, as in *Newby,* the police in this case did not corroborate Bonnie's statements through personal observation.

I also note that inasmuch as statements against penal interest may form the basis for an affidavit, the logic required to explain why Bonnie's statements are believable is fraught with peril. The anonymous

enough probable cause existed to believe that criminal activity was taking place at the time the search warrant was issued—without rely-

ing upon some anticipatory event to occur before the warrant could be activated.

tip of a citizen informant is not sufficiently trustworthy to issue a warrant unless his credibility has been established or the totality of the circumstances show that his statements are true. Ind.Code § 35–33–5–2(b). Bonnie's statements, according to the State's theory, are inherently believable because she is possibly subjecting herself to greater penalties. The difficulty with this reasoning is, however, that Bonnie was "caught red-handed" with marijuana in her home. The State's argument thus creates a Through–the–Looking–Glass scenario that even Lewis Carroll would envy: A criminal's "confession" that he purchased cocaine while in the Oval Office at the White House is somehow more believable than an anonymous tip that cocaine is being sold out of the abandoned house on the corner. Our criminal justice system is ill-served by such logic.

I would reverse the trial court's denial of Leicht's motion to suppress.

### ORDER

The Appellee, by counsel, has filed a Verified Motion for Publication of Memorandum Decision. Counsel states that this Court's opinion clarifies the law and involves issues of substantial public importance, which meets the criteria as set out in Appellate Rule 65(A). Further, the decision provides guidance on what constitutes probable cause sufficient to warrant the issuance of a search warrant. Counsel prays for an order publishing this Court's October 7, 2003 Memorandum Decision.

Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellee's Verified Motion for Publication of Memorandum Decision is GRANTED, and this Court's opinion handed down on October 7, 2003, marked Memorandum Decision, Not for

Publication is now ORDERED PUBLISHED.