**Jacob Scott LOVE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 85A02–0507–CR–652.**

Court of Appeals of Indiana.

Feb. 14, 2006.

**422**

Patrick J. Arata, AL Anzini III, David M. Zent, Arata Law Firm, Fort Wayne, for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

KIRSCH, Chief Judge.

Jacob Scott Love brings this interlocutory appeal of the trial court's denial of his motion to suppress evidence discovered during a search of his home. Love contends that the evidence is inadmissible because it was obtained in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution and that the trial court erred in denying his motion to suppress. On appeal, we address the following restated issues:

I. Whether an anonymous tip that Love committed a specific robbery coupled with an eyewitness report that a person matching the robber's description walked in the general direction of Love's home shortly after the robbery constituted reasonable, articulable, individualized suspicion that justified the seizure and search of Love's trash.

II. Whether two burnt candle holders, a powdery substance that field-tested positive for cocaine, and three used hypodermic needles in the Love family's trash established probable cause to justify the issuance of a search warrant authorizing the search of Love's home.[1]

We affirm.

---

1. Love also discusses whether the good-faith exception to the exclusionary rule would al-

## FACTS AND PROCEDURAL HISTORY

On November 11, 2004, a man wearing a ski mask robbed the CVS Pharmacy in Wabash, Indiana, by indicating that he had a knife up his sleeve and demanding the prescription drug OxyContin. After the robbery, the suspect left the scene on foot. *Transcript* at 9. One of the responding officers, Wabash Police Investigator Steven Gatchel, questioned the witnesses at the store and learned that the suspect was wearing "a Carhart type jacket with a gray or darkish colored hooded sweatshirt ... work type boots that were ... worn pretty heavily on the toes ... [and] gloves ...." *Id.* at 9. With this description, officers canvassed the neighborhood around the CVS in an attempt to locate the subject.

Investigator Gatchel also broadcast the suspect's description by means of a "reverse 911."[2] Based on that information, off-duty police officer Sammy Hipskind reported that an individual matching that description was walking through his yard, which was a block-and-a-half from the CVS. Another citizen, who was later determined to reside near Love, reported that he had seen someone in the area matching the broadcasted description.

On November 13, 2004, Wabash County Crime Stoppers received an anonymous telephone tip reporting that Love committed the CVS robbery, and providing a description of his home and its location. The tipster also stated that Love: (1) lived near Hipskind; (2) used a knife in the robbery; (3) stole OxyContin; and (4) provided OxyContin to someone to whom he owed money. *Appellant's App.* at 81.

Based on the Crime Stoppers tip, the facts that Love lived near the CVS and matched the description broadcast in the reverse 911, and that witnesses reported having seen such a man in Love's neighborhood around the time of the robbery, the Wabash Police decided to collect and search the Love household trash. Using a garbage truck driven by a retired police officer, Detective Nick Brubaker collected all of the trash bags on Love's street that had been set out for pick up, including four bags from Love's house, which the police kept separate from the rest.

In Love's trash, the officers found three used hypodermic needles and two burnt tin candle holders, from which the candles had been removed. A white residue found in the bottom of the candle holder tested presumptively positive for cocaine. Later that day Detective Brubaker prepared a search warrant affidavit, which provided:

> On Wednesday the 17th of November 2004, the following events occurred in the City of Wabash, Wabash County Indiana. I personally picked up and examined the contents of four (4) black trash bags located curb side at the above address. The reason for the trash pick up was that the Wabash City Police Department received a Crime Stoppers Tip that Jake Love was involved with the robbery at CVS. The trash bags contained the following items, [ (1) ] mail addressed to Jake Love, Tiffany Love, and Robert Love at the above address, (2) two burnt tin small candle holders, (3) three used hypodermic needles (Both items are common items associated with the injecting of drugs[.), (4) ], a small

---

low a search of Love's residence. Finding that there was sufficient probable cause to support the warrant, we do not address this issue.

**2.** Investigator Gatchel described a reverse 911 as a recorded message, which contains a description of the incident and the suspect and is sent to telephones in a targeted geographical area. *Tr.* at 8.

amount of an off-white powder substance that field tested with a presumptive positive result for Cocaine.

*Appellant's App.* at 69. Based on this affidavit, the trial court issued a search warrant authorizing a search of Love's residence for cocaine and evidence of the use of cocaine. *Id.* at 71.

Officers executed the warrant on November 17, 2004, in Love's presence. During the search officers found six OxyContin tablets (two of which Love swallowed during the search) and a soda pop can with a hidden compartment containing a brownish powder that field-tested presumptively positive for heroin. Love was arrested and eventually confessed to having robbed the CVS. He was subsequently charged with four counts, including Class B felony robbery, possession of a controlled substance, and obstruction of justice (for having swallowed the OxyContin during the search).

Prior to trial, Love moved to suppress all evidence found during the search. The trial court conducted an evidentiary hearing, and, on June 7, 2005, the trial court issued an interlocutory order denying Love's motion to suppress. On June 22, 2005, at Love's request, the trial court issued an Order Granting Petition for Certification of Interlocutory Appeal and For Stay of Proceedings Pending Appeal. On August 26, 2005, our court accepted jurisdiction over Love's interlocutory appeal.

## DISCUSSION AND DECISION

■ We review the denial of a motion to suppress similar to claims challenging the

sufficiency of the evidence. *Johnson v. State,* 829 N.E.2d 44, 47 (Ind.Ct.App.2005), *trans. denied.* We do not reweigh the evidence. *Wessling v. State,* 798 N.E.2d 929, 934 (Ind.Ct.App.2003). Rather, we consider the evidence most favorable to the trial court's ruling and any uncontested evidence favorable to the defendant. *Johnson,* 829 N.E.2d at 47.

## I. Search of Love's Trash

■ Love's attack on the trial court's ruling is two-fold. First, he argues that the police violated his rights under Article 1, Section 11 of the Indiana Constitution by searching through his trash without reasonable articulable suspicion.[3] Article 1, Section 11 of the Indiana Constitution, in pertinent, part provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated." The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Litchfield v. State,* 824 N.E.2d 356, 358 (Ind.2005). Our Supreme Court has stated, "[T]he totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id.* Thus, although there may well be other relevant considerations under the circumstances, the reasonableness of a search or seizure turns on a balance of: "1) the degree of concern, suspicion, or knowledge

---

**3.** In *California v. Greenwood,* 486 U.S. 35, 39, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the United States Supreme Court upheld the warrantless search of the defendant's garbage left at the curb for pickup, finding that there was no violation of the Fourth Amendment to the United State's Constitution. *See Litchfield v. State,* 824 N.E.2d 356, 358 (Ind.2005).

Recognizing that *Greenwood* forecloses any claim under the Fourth Amendment, Love does not challenge the search of his trash under the Federal Constitution, but asks us to exclude the evidence as the product of a search and seizure in violation of Article 1, Section 11 of the Indiana Constitution. *See Litchfield v. State,* 824 N.E.2d at 359.

that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.* at 361; *Crook v. State,* 827 N.E.2d 643, 645 (Ind.Ct.App.2005).

■■■ Our Supreme Court has recognized that "[s]eizure of trash that is in its usual location for pickup is no intrusion at all on the owner's liberty or property interests" because the owner of the property wants, and expects, the trash to be taken away. *Litchfield,* 824 N.E.2d at 363. "However, 'it is not reasonable for law enforcement to search indiscriminately through people's trash.' " *Crook,* 827 N.E.2d at 645–46 (quoting *Litchfield,* 824 N.E.2d at 363). Therefore, to impose the appropriate balance between the privacy interest of citizens and the needs of law enforcement, two requirements exist for a search of trash to be reasonable. *Edwards v. State,* 832 N.E.2d 1072, 1074 (Ind. Ct.App.2005). First, the trash must be retrieved in substantially the same manner as the trash collector would use. *Id.* Love does not contend otherwise. Second, in order for the search of the trash to be permissible, the officer must possess a reasonable, articulable suspicion, i.e., the same as that required for a *Terry* stop of an automobile, for seizing the trash. *Crook,* 827 N.E.2d at 646 (citing *Litchfield,* 824 N.E.2d at 357).

■■■ Love is correct that an anonymous telephone tip, absent any independent indicia of reliability, does not give an officer an articulable suspicion to search a person's trash. *See Washington v. State,* 740 N.E.2d 1241, 1246 (Ind.Ct.App.2000), *trans. denied.* However, the Crime Stoppers tip contained independent indicia of reliability. Here, the tipster knew Love's name, that he had used a knife in the robbery, that the robber stole OxyContin from a CVS pharmacy, and the location of Love's house, which was quite near the CVS, and provided names of the persons to whom Love gave some of the OxyContin. Furthermore, Officer Hipskind and a second witness had seen a person matching Love's description near the CVS at the time of the robbery. The specificity of the Crime Stoppers tip, plus the independent identifications of a person matching Love's description, provided the police with an articulable suspicion to justify the search of Love's trash. The items found in the trash were properly discovered evidence.

## II. Probable Cause to Support the Search Warrant

■■■ Love next argues that the two burnt candle holders, a powdery substance that field-tested positive for cocaine, and three used hypodermic needles in the Love family's trash were not sufficient to constitute probable cause to search his home. A court may issue a warrant only upon probable cause, supported by oath or affirmation, to search for property, the possession of which is unlawful. IC 35–33–5–1. To obtain a warrant, the State must file with the court an affidavit that describes the place to be searched, the unlawful items to be searched for, and the facts that constitute probable cause. IC 35–33–5–2.

"In deciding whether to issue a search warrant, the task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. The duty of the reviewing court is to determine whether the magistrate had a 'substantial basis' for concluding that probable cause existed. Substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable

inferences drawn from the totality of the evidence support the determination of probable cause. 'Reviewing court' for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing the decision."

*Merritt v. State,* 803 N.E.2d 257, 260 (Ind. Ct.App.2004) (quoting *Jaggers v. State,* 687 N.E.2d 180, 181–82 (Ind.1997) (citations, quotation marks, and alterations omitted)).

 Here, the trial court did not err in finding that a substantial basis existed to conclude that probable cause was present. The trash that the officers legally retrieved from Love's household contained both drug paraphernalia and evidence of cocaine. Given the presence of cocaine, and the fact that the possession of cocaine itself is a crime,[4] we conclude that the warrant was based upon probable cause, and the evidence discovered during the execution of the warrant was admissible. *See Edwards,* 832 N.E.2d at 1080 (marijuana seeds found in defendant's trash, which were relied upon to provide probable cause for warrant, constituted sufficient probable cause because possession of seeds itself was a crime).

Affirmed.

SULLIVAN, J., and DARDEN, J., concur.