Willie EATON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 89A04–0611–CR–641.

Court of Appeals of Indiana.

Dec. 28, 2007.

Transfer Granted Feb. 29, 2008.

---

David M. Jordan, Lafuze, Jordan & Cox, Richmond, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

### STATEMENT OF THE CASE

Willie Eaton appeals his convictions for Class A felony dealing in cocaine and Class A misdemeanor possession of marijuana

following a jury trial. Eaton raises three issues for our review, which we restate as whether the trial court abused its discretion in admitting evidence obtained by the State pursuant to two search warrants.[1]

We reverse.

## FACTS AND PROCEDURAL HISTORY

On May 4, 2005, Indiana State Police Officer Ron Shoemaker filed an affidavit ("Affidavit") in support of a search warrant request for Eaton's residence ("first warrant"). The Affidavit provided the following factual basis for that request:

The affiant, Ron Shoemaker, of the Indiana State Police, swears that he has good cause to believe that evidence of criminal activity is located at the residence of Willie Eaton, 813 North 8th Street, Richmond, Indiana, 47374.

On May 4th, 2005, at approximately 2:15 p.m., Trooper Wildauer observed a vehicle traveling along Interstate 70 near mile post 91 in Marion County, Indiana. Trooper Wildauer observed the vehicle make an unsafe lane movement. Trooper Wildauer measured the speed of the vehicle using a radar device at 62 miles per hour in a 55 mile per hour zone. Trooper Wildauer stopped the vehicle. The driver of the vehicle identified himself as Edgar Gonzalez through an identification card. Trooper Wildauer spoke with Gonzalez about where he was traveling. Trooper Wildauer learned that Gonzalez' version of events was not making sense. [Specifically], Gon[za]lez said he was going to mile post marker 149, but he did not know the ultimate destination of his trip or who he was supposed to meet. After giving Gonzalez

his identification card and warning ticket, affiant sought, and obtained, consent to search the vehicle.

Affiant subsequently located a hidden compartment in the passenger side air bag compartment. Inside said compartment, affiant located approximately four (4) kilos of a substance believed to be cocaine. The substance was subsequently field tested and presump[t]ively confirmed to be cocaine.

Gonzalez told affiant that he was en route to Richmond, Indiana, and he was meeting some "black guys." Gonzalez was to take the vehicle to Richmond and deliver it. For his efforts, Gonzalez was to be paid $600.00. Gonzalez told affiant he believed he was transporting marijuana, not cocaine.

Gonzalez agreed to cooperate with officers in continuing to transport the cocaine to Richmond. Trooper Wildauer photographed the cocaine. Trooper Wildauer removed three kilos of cocaine, and inserted three fake kilos of cocaine. Officers left one kilo of cocaine inside the vehicle.

Affiant accompanied Gonzalez to Richmond, Wayne County, Indiana. Affiant drove the vehicle, while Gonzalez was the passenger. Officers also placed a recording device in the vehicle to monitor conversations. While en route to Richmond, affiant heard Gonzalez speak to one of the males for whom he intended to deliver the cocaine. Affiant heard a conversation between Gonzalez and the male because the conversation was broadcast over a Nextel phone, which is similar to a walkie-talkie. The male caller inquired as to the location of Gon-

---

1. We held oral argument on this matter on December 6, 2007 at Taylor University. We thank faculty, staff, and students for their hospitality and additionally commend counsel on the quality of their oral and written advocacy. This was our 200th traveling oral argument.

zalez. Gonzalez responded that he was near the 110 mile marker. The male caller told Gonzalez that he [ (]Gonzalez[) ] was still forty (40) miles away from the meeting location. The male directed Gonzalez to a muffler store located on National Road West in Richmond.

Affiant exited the vehicle near the 149 mile marker. Affiant activated the monitoring device within the vehicle.

Gonzalez travel[ed] to the intersection of West Main and 5th Streets in Richmond. Gonzalez turned left onto Main Street. Gonzalez turned the wrong way. Gonzalez then called someone on his cell phone. The male on the phone told Gonzalez that he had made a wrong turn. The male asked Gonzalez where he was located. Gonzalez told the male that he was near the Pizza King. The male then directed Gonzalez to go to the Pizza King and wait. The male arrived moments later to meet Gonzalez. The male was driving a tan Chevrolet Blazer. Shoemaker and Sgt. Bilke established surveillance on the Pizza King. Gonzalez then told affiant that "he is here" and stated that he was in a brown Blazer. Shoemaker observed Gonzalez follow the tan Blazer westbound on Main Street. Both vehicles then pulled insi[d]e Discount Muffler located at 1500 National Road West. Affiant observed Dewayne Eaton exit the tan Blazer. Shoemaker knows Dewayne (also known as "Wayne") Eaton personally from prior drug investigations.

Gonzalez was instructed to pull into one of the service bays by a male. Affiant observed Wayne Eaton standing outside the business talking on a cell phone. Gonzalez told affiant that he thought the deal was going to take place at some other location. Gonza[le]z thought they were simply going to fix his car there.

Affiant heard someone repairing the tire inside the business.

Short[ly] thereafter, Willie Eaton arrive[d] in [a] blue vehicle. Willie Eaton then spoke with Wayne Eaton and Gonzalez. Willie Eaton then pulled his vehicle into the service bay.

Officers heard movement consistent with the sound of someone attempting to retrieve the cocaine in the vehicle. Gonzalez could be heard saying "Show it to me." Officers interpreted this statement to mean that Gonzalez was wanting to see the cash which would be used to purchase the cocaine.

Officers then entered the business and secured the location. While doing so, Wayne Eaton was attempting to flee through the back door of the business. Officers located a black bag in the front passenger seat. Inside the bag, officers observed a large sum of vacuum sealed cash. Without opening it, officers estimated there to be approximately $60,000 to $100,000 worth of U.S. currency. Affiant notes, however, that said conclusion is based only on observing bills on the outside of the bundles. It is possible that there is more or less currency in said bag. Officers also observed a quantity of crack cocaine.

Affiant obtained an Indiana Operator's License indication that Dewayne Eaton resides at 1215 Sheridan Street in Richmond. Sgt. Porfidio reported that Willie Eaton resides at 813 North 8th Street, Richmond, Indiana, 47374. Willie Eaton provided said address to officials at the Wayne County Jail.

Appellant's App. pp. 16–18.

In executing the first warrant on May 4, officers saw: "(1) [a] purple Crown Royal bag containing a substance similar in texture and color to cocaine; (2) digital scales; (3)[a] sawed[-]off shot-gun and 'long guns'; (4) U.S. currency; [and] (5)[a]dditional

quantity of substance similar in texture and color to cocaine." *Id.* at 25. On the basis of those observations, officers sought a second search warrant ("second warrant") to search Eaton's residence. That same day, the trial court ordered the second warrant and the police seized the described items.

On May 6, the State charged Eaton with Class A felony conspiracy to deal in cocaine; Class A felony dealing in cocaine; Class B felony being a serious violent felon in possession of a firearm; and Class A misdemeanor possession of marijuana. On May 25, the State dismissed the charge that Eaton was a serious violent felon in possession of a firearm. A jury trial on the remaining charges commenced on September 22, 2006, and the State, over Eaton's objections, presented evidence of the items seized pursuant to the second warrant. In addition to those items, the State presented evidence of Gonzalez' and Wayne's actions on the day in question, the observations of the various officers, and the amount of cash and cocaine recovered at the garage.

Following the close of the State's case-in-chief, Eaton moved for a directed verdict on all counts. The court granted Eaton's motion on the conspiracy charge but denied his motion on the remaining two charges. The jury then found Eaton guilty on those remaining charges, and the court sentenced Eaton to a total of twenty-five years imprisonment with five years suspended. This appeal ensued.

## DISCUSSION AND DECISION

 Eaton contends that the trial court erred when it ordered the first warrant. But Eaton is challenging the admission of evidence following his conviction rather than in an interlocutory appeal. Thus, the issue is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial. *Bentley v. State,* 846 N.E.2d 300, 304 (Ind.Ct.App.2006), *trans. denied.* A trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. *Id.* An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

 The federal and state constitutions guarantee that a court will not issue a search warrant without probable cause. *Overstreet v. State,* 783 N.E.2d 1140, 1157 (Ind.2003) (citing U.S. Const. amend IV; Ind. Const. art. I, § 11). In Indiana, this protection has been codified in Indiana Code section 35–33–5–1. Probable cause exists if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Love v. State,* 842 N.E.2d 420, 425–26 (Ind.Ct.App.2006) (quoting *Merritt v. State,* 803 N.E.2d 257, 260 (Ind.Ct.App.2004)). The decision to issue the warrant should be based on the facts stated in the supporting affidavit and the rational and reasonable inferences drawn therefrom. *Leicht v. State,* 798 N.E.2d 204, 207 (Ind.Ct.App.2003), *trans. denied.*

 We will uphold a judicial determination of probable cause if there is a substantial basis for concluding that a search would uncover evidence of wrongdoing. *See Love,* 842 N.E.2d at 425–26. Substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Id.* (quoting *Merritt,* 803 N.E.2d at 260). In our review, we consider only the evidence presented to the issuing magistrate and may not consider post hoc justifications for the

search. *Query v. State,* 745 N.E.2d 769, 771 (Ind.2001).

Indiana Code section 35–33–5–2 (2004) governs affidavits used to obtain search warrants and provides, in relevant part:

(a) Except as provided in [Indiana Code Section 35–33–5–8], no warrant for search or arrest shall be issued until there is filed with the judge an affidavit:

(1) particularly describing:

(A) the house or place to be searched and the things to be searched for; or

(B) particularly describing the person to be arrested;

(2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:

(A) the things as are to be searched for are there concealed; or

(B) the person to be arrested committed the offense; and

(3) setting forth the facts then in knowledge of the affiant or information based on hearsay, constituting the probable cause.

Here, the Affidavit filed with the State's request for the first warrant did not set forth facts that constitute probable cause to search Eaton's residence. Rather, the Affidavit recited Trooper Wildauer's interaction with Gonzalez and the events leading up to Eaton's arrival at the automobile repair shop. The Affidavit then states that "Willie Eaton arrive[d] in [a] blue vehicle. Willie Eaton then spoke with Wayne Eaton and Gonzalez. Willie Eaton then pulled his vehicle into the service bay." Appellant's App. p. 17. And, subsequent to Eaton's arrival, the Affidavit notes that the police heard someone access the hidden cocaine in Gonzalez's vehicle, and, in response, the police rushed into the shop and arrested Wayne, Gonzalez, and Eaton.

The Affidavit is lacking in a number of noticeable areas. The Affidavit does not specify Eaton's location when the police entered the shop, either generally or in relation to Wayne, Gonzalez, or Gonzalez' vehicle. The Affidavit provides no information regarding the presence of other persons at the shop at the time of the police operation, or whether the shop was even open to the public for business. Similarly, the Affidavit does not mention the presence of absence of other vehicles inside the shop to which Gonzalez or Wayne may have had access. The Affidavit does not discuss the length or nature of Eaton's interaction with Wayne and Gonzalez, whether Eaton pulled his vehicle into a service bay near Gonzalez's vehicle, or whether any of the service bay doors were open or closed during the investigation. Nor does the Affidavit provide any clear reason to conclude that a search of Eaton's residence would uncover evidence of criminal activity. Rather, the Affidavit merely discloses the fact that Eaton was at the shop at the same time as Gonzalez and Wayne.

The State disputes Eaton's reference to facts "omitted" from the Affidavit, noting our recent decision in *Ware v. State,* 859 N.E.2d 708 (Ind.Ct.App.2007), *trans. denied.* But probable cause is contextual. As we stated in *Newby v. State,* 701 N.E.2d 593, 603–04 (Ind.Ct.App.1998): " 'Totality of the circumstances' means just that, not information that has been selected with the goal of making the judicial finding of probable cause more likely. Nor does 'totality of the circumstances' allow the omission of relevant information that could affect an independent judicial determination." And as our Supreme Court said in *Jaggers v. State,* 687 N.E.2d 180, 185 (Ind.1997): "In applying [the good-faith test], our cases have stressed the importance of accurately presenting all

relevant information to the magistrate. Only then can the magistrate make the neutral and detached determination the Fourth Amendment requires of whether probable cause exists."

Those approaches are supported by *Ware*, in which we held that "a probable cause affidavit must include all material facts," including "those facts that 'cast doubt on the existence of probable cause.'" *Id.* at 718 (quoting *Query v. State*, 745 N.E.2d 769, 772 (Ind.2001)). And after finding that the probable cause affidavit at issue supported a finding of probable cause, we then held that the defendant was permitted to challenge that affidavit on the basis of omitted facts. In doing so, the defendant was required to show that "police omitted [the] facts with the intent to make ... the affidavit misleading," and that those omitted facts would have negated the finding of probable cause. *Id.* at 718–19. *See also Newby*, 701 N.E.2d at 603–04.

Here, however, the face of the Affidavit does not establish probable cause. Thus, Eaton does not need to demonstrate either that the police intended to create a misleading affidavit or that a finding of probable cause would be negated by the inclusion of additional facts. Rather, Eaton's reference to other potentially significant facts merely emphasizes the deficiencies in the Affidavit.

The Affidavit established no facts, context, or nexus from which a neutral and detached magistrate could find probable cause. The Affidavit does not connect Eaton either directly or inferentially with the drug transaction. Hence, the Affidavit's brief description of Eaton's arrival at the shop does not establish "a fair probability that contraband or evidence of a crime will be found" at Eaton's residence. See *Love*,

842 N.E.2d at 425–26 (quoting *Merritt*, 803 N.E.2d at 260). Therefore, the first warrant was defective.

■■■ Nonetheless, evidence seized pursuant to a search warrant later invalidated is admissible if the police officers executing the warrant acted in "good faith." *Doss v. State*, 649 N.E.2d 1045, 1047 (Ind.Ct.App.1995). "Good faith," defined by Indiana Code Section 35–37–4–5(b)(1)(A), exists where a search warrant is *"properly issued upon a determination of probable cause* by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that [is] *reasonably believed by the law enforcement officer to be valid." Id.* (emphases original). However, "good faith" does not exist where the affidavit upon which probable cause rests is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). If the good-faith exception cannot be applied, evidence seized pursuant to the defective warrant must be excluded. *See id.*

Here, the Affidavit is so lacking in indicia of probable cause as to render any official belief in its existence entirely unreasonable.[2] Again, the Affidavit's only reference to Eaton concerned his arrival at the shop. The Affidavit provided no reasonable basis to establish a fair probability either that Eaton was engaged in illicit activity or that a search of Eaton's residence would uncover such illicit activity. Thus, the good faith exception cannot apply.

Because the first warrant lacked probable cause, and because the good-faith ex-

---

**2.** We emphasize that the good-faith test is an objective one, and that "an officer's personal belief ... is irrelevant." *Doss*, 649 N.E.2d at 1048.

ception does not apply, any evidence seized in the course of the illegal search is not admissible in the subsequent criminal proceeding. *See Adams v. State,* 762 N.E.2d 737, 745 (Ind.2002).

> When applied, the [fruit of the poisonous tree] doctrine operates to bar not only evidence directly obtained, but also evidence derivatively gained as a result of information learned or leads obtained during an unlawful search or seizure. To invoke the doctrine, a defendant must show that challenged evidence was obtained by the State in violation of the defendant's Fourth Amendment rights.

*Id.* (quoting *State v. Farber,* 677 N.E.2d 1111, 1114 (Ind.Ct.App.1997) (Rucker, J.), *trans. denied* ) (alteration original).

Here, the evidence seized pursuant to the second warrant was derivatively gained by the State as a result of the unlawful search of Eaton's residence under the first warrant. For all of these reasons, that evidence must be barred, and Eaton's resulting convictions must be reversed.

Reversed.

BAKER, C.J., and KIRSCH, J., concur.