ATTORNEY FOR APPELLANT
David M. Jordan
Lafuze, Jordan & Cox
Richmond, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Scott L. Barnhart
Deputy Attorney General
Indianapolis, Indiana

In the
Indiana Supreme Court

**FILED**
Jun 30 2008, 2:53 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 89S04-0802-CR-106

WILLIE EATON,                                              *Appellant,*

v.

STATE OF INDIANA,                                         *Appellee.*

Appeal from the Wayne Circuit Court, No. 89A04-0611-CR-641
The Honorable David Kolger, Judge

On Transfer from the Indiana Court of Appeals, No. 89C01-0505-FA-6

**June 30, 2008**

**Dickson, Justice.**

In this direct appeal, the defendant challenges his convictions for Dealing in Cocaine, a class A felony,[1] and Possession of Marijuana, a class A misdemeanor.[2]  The Court of Appeals reversed both convictions, finding that evidence was improperly admitted due to the insufficiency of a police affidavit on which an initial search warrant was issued.  Eaton v. State, 878 N.E.2d 481, 487 (Ind. Ct. App. 2007).  We granted transfer and affirm the convictions.

---

[1] Ind. Code § 35-48-4-1(a)(2)(C); (b)(1).

[2] I.C. § 35-48-4-11(1).

The defendant presents two principal claims: (1) the initial search warrant was not supported by sufficient probable cause,[3] and (2) the trial court erroneously admitted evidence seized without sufficient authorization in the search warrants.

## 1. Adequacy of Affidavit for Search Warrant

The defendant contends that the initial search warrant, which authorized police to search the defendant's home, was not supported by probable cause. He argues that the police affidavit on which the warrant was based failed to identify or associate the defendant with any conduct implicating criminal activity, place, or association. He further urges that the affidavit failed to show that the defendant's home contained a criminal enterprise or evidence of crime. He does not assert that the warrant violated any specific statutory or constitutional requirements for particularity, but rather makes a factual argument that, considering the contents of the supporting affidavit, there was "absolutely no probable cause . . ."[4], a "complete absence of . . . probable cause . . . ."[5]

The existence of probable cause is evaluated pursuant to the "totality-of-the-circumstances" test. Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983). Probable cause exists "when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" U.S. v. Grubbs, 547 U.S. 90, 95, 126 S.Ct. 1494, 1499 (2006) (quoting Gates, 462 U.S. at 238). Significantly, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Gates, 462 U.S. at 245 n.13. The trial court's task is to determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place[,]" *id*. at 238, while a reviewing court must "ensure that the magistrate had a 'substantial basis for . . . con-

---

[3] The defendant's brief also argues that, if probable cause was lacking for issuance of the warrant, this deficiency is not salvaged by the good faith exception and that it requires exclusion of all subsequently obtained evidence resulting from a second search warrant. Because we find the initial warrant was supported by sufficient probable cause, these ancillary issues are moot.

[4] Appellant's Br. at 17.

[5] *Id.* at 18.

. . . conclud[ing]' that probable cause existed." *Id*. at 238-39 (quoting <u>Jones v. US</u>, 362 U.S. 257, 271, 80 S.Ct. 725, 736 (1960)).

In its essential parts, the lengthy affidavit stated that when Edgar Gonzalez was pulled over on Interstate 70 for an unsafe lane change and speeding, he informed the Indiana State Police officer that his destination was a specific milepost marker, but initially claimed no other knowledge of his destination. After consenting to a vehicle search which disclosed approximately four kilograms of cocaine, according to field testing, Gonzalez told the officer that his mission was to deliver the vehicle to some men in Richmond, Indiana, for which he was to be paid $600. Gonzalez continued to his destination, with the affiant State Police officer as his passenger, and a recording device in the vehicle to monitor conversations. During the ensuing drive, the officer heard Gonzalez communicate by wireless telephone to someone who directed Gonzalez to a particular Richmond muffler store. Thereafter, the officer activated the monitoring device and exited the vehicle. When Gonzalez arrived at the muffler store, he was told to pull into one of the service bays. Shortly thereafter, the defendant arrived, spoke with Gonzalez and a third man, and pulled his vehicle into a service bay. The officers then heard the sound of someone attempting to retrieve the cocaine in the vehicle. Gonzalez was then heard saying "[s]how it to me." Appellant's App'x at 17. Police officers then entered the business and observed on the front passenger seat of one of the vehicles a black bag containing "a quantity of crack cocaine" and a large sum of "vacuum sealed cash," estimated to be $60,000 to $100,000 in U.S. currency. Appellant's App'x at 18. The affiant, then serving on the Drug Enforcement Administration, stated that drug traffickers commonly keep "U.S. currency within quick access" and maintain records in a variety of forms including "ledgers, computers, cell phones, pagers, phone bills, and wire transfer receipts." *Id.* Of the two men, one consented to a search of his residence. The defendant did not, and the affidavit reported his residence address and requested a warrant to search his residence for documents related to drug trafficking. The warrant was issued and, during its execution, the officers observed several items that resulted in the filing of a new affidavit seeking a second warrant authorizing the seizure of various additional items.

The defendant's argument is that these facts fail to establish probable cause for the issuance of the warrant authorizing police to search his residence. We disagree. The facts presented

3

in the affidavit and the reasonable inferences therefrom show that the defendant was involved in the receipt and unloading of a substantial quantity of illegal drugs, and that incriminating records commonly maintained by persons engaged in drug trafficking were likely to be found at the defendant's residence. Evaluating the totality of the circumstances, we conclude that the facts set forth in the affidavit established a fair probability, that is, a substantial chance, that evidence of drug trafficking would be found at the defendant's residence. We are convinced that the issuing magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238-39.

With emphasis on Figert v. State, 686 N.E.2d 827, 830 (Ind. 1997), the dissent asserts that a warrant authorizing a premises search must be based on facts demonstrating a nexus between the drug activity and the place to be searched. In Figert, the affidavit for the search warrant of three homes in close proximity, the third of which was the defendant's residence, showed that drugs were being sold from the first two, but the "only fact detailed as to the third home" or as to the defendant "was that 'there are currently a large number of unidentified individuals living in and frequenting the three trailers.'" Id. at 829. The affidavit did not allege that the defendant sold drugs, nor that "the third home was a base of operations for drug traffiking." Id. No connection was shown between the individuals who lived in the first two homes, from which the officers had bought drugs, and the defendant or his residence. This Court held that these facts failed to establish probable cause for the search of the third home.

Unlike the facts in Figert, the supporting affidavit in the present case did present sufficient facts showing that the defendant was involved in drug trafficking, and it did present facts and reasonable inferences establishing a fair probability that records and equipment related to such drug trafficking were likely to be found in the defendant's home. As acknowledged by the dissent, other courts have recognized that it is reasonable to believe that drug dealers keep evidence of their activities in their residences. *See, e.g.,* United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993); State v. Godbersen, 493 N.W.2d 852, 855 (Iowa 1992).

We reject the defendant's claim that the warrant authorizing the search of his home was not supported by sufficient probable cause.

4

## 2. Seizure of Items Not Listed in the Search Warrants

The defendant contends that several items collected from his residence violated his constitutional right to be free from unreasonable searches and seizures.[6] The defendant first argues that the cocaine seized pursuant to the second warrant was initially discovered during the execution of the first warrant and exceeded its scope, requiring exclusion from evidence. He next asserts that various incidental items (*e.g.*, baggies, the baggie box, razor blades, residue, marijuana, the "marijuana tray," handguns, the "tin" holding ammunition, a scooter, etc.) were not enumerated in the second warrant and thus improperly taken and admitted into evidence. Without explanatory argument or citation to supporting authority, the defendant simply declares that the collection and seizure of the items not enumerated in the search warrants "comprises a clear violation" of his constitutional rights against illegal search and seizure. Appellant's Br. at 21.

These claims are not meritorious. A police officer may seize evidence not identified in a warrant "when he inadvertently discovers items of readily apparent criminality while rightfully occupying a particular location." Jones v. State, 783 N.E.2d 1132, 1137 (Ind. 2003); *see also* Overstreet v. State, 783 N.E.2d 1140, 1160 (Ind. 2003); Houser v. State, 678 N.E.2d 95, 101 (Ind. 1997). Indiana law enforcement officials "do not need a warrant to seize incriminating evidence under the plain view doctrine if the following conditions are met: (1) police have a legal right to be at the place from which the evidence can be plainly viewed; (2) the incriminating character of the evidence is immediately apparent; and (3) police have a lawful right of access to the object itself." Houser, 678 N.E.2d at 101. The defendant does not argue that the items seized violated the plain view doctrine nor dispute that they were in plain view of the officers during their execution of the search warrants.

---

[6] He claims the protections of both the state and federal constitutions. We address only his federal constitutional claim, however, because he does not argue that the search and seizure provision in the Indiana Constitution calls for a different analysis or would lead to a different result in this case. *See* White v. State, 772 N.E.2d 408, 411 (Ind. 2002); Williams v. State, 724 N.E.2d 1093, 1096 n.5 (Ind. 2000); Matheney v. State, 688 N.E.2d 883, 906 n.29 (Ind. 1997); Fair v. State, 627 N.E.2d 427, 430 n.1 (Ind. 1993); St. John v. State, 523 N.E.2d 1353, 1355 (Ind. 1988).

Amended to his search and seizure claim, the defendant's also states that, "[h]owever, we are not strictly dealing here with search and seizure violations," and asserts that the evidence of dealing cocaine should not have been admitted because "the State did not charge the [d]efendant with dealing cocaine under the 'dealing' statute . . . [but rather only] charged the [d]efendant with possession of cocaine . . . ."  Appellant's Br. at 21.  The defendant does not, however, claim the admission of irrelevant evidence, nor evidence whose unfair prejudice outweighed its probative value, nor improper character or other crime evidence.  *See* Ind. Evidence Rules 402, 403, 404.  Instead, he now claims only that the admission of this evidence denied his right to a fair trial.

The defendant was convicted on the charge that he "did possess, with intent to deliver cocaine weighing three (3) grams or more, contrary to Indiana law."  Appellant's App'x at 13.  Possession of cocaine with the intent to deliver it is a class A felony in any of three additional circumstances: (1) "the amount of the drug involved weighs three (3) grams or more;" (2) the offense involved the delivery of the drug, regardless of quantity, to "a person under eighteen (18) years of age [and] at least three (3) years junior to the person;" or (3) the offense involved manufacture, delivery, or financing of the delivery of the drug on a school bus or within one thousand feet of a school, public park, family housing complex, or a youth program center.  I.C. § 35-48-4-1(b).  We understand the defendant to argue that, because he was charged only under the first circumstance, which is based only upon the quantity of cocaine, his right to a fair trial was violated by the admission of evidence relevant not to possession but rather tending to prove the second circumstance, which involves the delivery of the cocaine, with which the defendant was not expressly charged.  The State does not respond to this contention.

But the criminal offense with which the defendant was charged and convicted necessarily also includes the elements of section 1(a) of the statute and thus requires that the defendant "did possess, *with intent to deliver* cocaine weighing three (3) grams or more."  Appellant's App'x at 13 (emphasis added); *see also* I.C. § 35-48-4-1(a).  The items of evidence challenged by the defendant were directly relevant to the defendant's intent to deliver.  We further observe that the defendant did not claim any violation of his right to fair trial in any of his trial court objections[7] to the challenged evidence, and thus the issue is procedurally defaulted.  Evid. R. 103(a).

---

[7] *See* Tr. at 857, 858, 859, 860, 862, 863-64, 865, 867, 870, 872, 875, 878, and 881.

## Conclusion

We affirm the judgment of the trial court.

Shepard, C.J., and Sullivan, and Boehm, JJ., concur.  Rucker, J., dissents with separate opinion.

**RUCKER, J., dissenting.**

I respectfully dissent. As a matter of law none of the facts recited in the state trooper's lengthy affidavit establishes probable cause to search Eaton's home. The affidavit does reveal that the trooper was acquainted with defendant's brother, Wayne Eaton, "from prior drug investigations," and that it was Wayne Eaton whom Gonzalez followed to the muffler shop. App. at 17. Concerning Willie Eaton the affidavit says he "arrive[d] in a blue vehicle. Willie Eaton then spoke with Wayne Eaton and Gonzalez. Willie Eaton then pulled his vehicle into the service bay." Id. Thereafter, officers heard movement in Gonzalez's car "consistent with the sound of someone attempting to retrieve the cocaine in the vehicle" and heard Gonzalez say, "Show it to me." Id. At that point "officers then entered the business and secured the location. While doing so Wayne Eaton was attempting to flee through the back door of the business." Id. Inside of Gonzalez's car officers retrieved a black bag containing approximately $60,000 to $100,000 in currency along with "a quantity of crack cocaine." App. at 18. Along with Wayne Eaton and Gonzalez, Willie Eaton was arrested and the officers obtained a warrant to search his home for "documents relating to drug trafficking." Id. According to the trooper obtaining the warrant, "Affiant has been working narcotics investigations for approximately nine (9) years with the Indiana State Police. Affiant is currently assigned [to] the Drug Enforcement Administration. Affiant knows that drug traffickers commonly keep records to maintain and promote the business of drug trafficking. Drug traffickers will commonly keep trafficking information in a variety of forms including: ledgers, computers, cell phones, pagers, phone bills, and wire transfer receipts. Affiant knows that drug traffickers often keep U.S. currency within quick access and rarely place money in financial institutions for fear of detection." Id.

In deciding whether to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. Id. at 238-39. A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable in-

1

ferences drawn from the totality of the evidence support the determination of probable cause. State v. Spillers, 847 N.E.2d 949, 953 (Ind. 2006). A "reviewing court" for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. Id.

There is authority for the proposition that a neutral and detached magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and type of offense. See, e.g., United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993) ("In the case of drug dealers, evidence is likely to be found where the dealers live."); State v. Godbersen, 493 N.W.2d 852, 855 (Iowa 1992) (Where drugs found in car were packaged to indicate person was dealer, there exists reasonable belief that the person kept drugs and other evidence in residence.).

But, the "physical entry of the home is the chief evil against which the . . . Fourth Amendment is directed . . . ." United States v. United States District Court, 407 U.S. 297, 313 (1972). Thus, the proper focus of a probable cause affidavit for a search warrant is not whether the defendant committed a crime, but rather the likelihood that evidence will be found in the place to be searched. Zurcher v. Stanford Daily, 436 U.S. 547, 556 & n.6 (1978). As a consequence most courts require that a nexus between the items to be seized and the place to be searched must be established by specific facts; an officer's general conclusions are not enough. See, e.g., United States v. Schultz, 14 F.3d 1093, 1097 (6th Cir. 1994) (While officer's training and experience may be considered in determining probable cause, it cannot substitute for the lack of an evidentiary nexus.); United States v. Lalor, 996 F.2d 1578, 1582-83 (4th Cir. 1993) (Although probable cause can be inferred from circumstances, including the nature of the item and where one might normally keep it, because no evidence connected drug activity to defendant's home the warrant was defective.); United States v. Rosario, 918 F. Supp. 524, 531 (D.R.I. 1996) (To permit a search warrant based upon the self-avowed expertise of a law enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect.); United States v. Rios, 881 F. Supp. 772, 776-77 (D. Conn. 1995) (Officer's general averments based on training and experience do not, standing alone, constitute a substantial basis

2

for the issuance of a search warrant.); State v. Kahn, 555 N.W.2d 15, 18 (Minn. Ct. App. 1996) (requiring facts specifically linking drug activity to dealer's residence and rejecting generalizations regarding habits of drug dealers); State v. Johnson, 578 N.W.2d 75, 83 (Neb. Ct. App. 1998) (no probable cause where supporting affidavit contained generalizations about the habits of drug dealers but no articulable facts showing these generalizations applied to defendant); State v. Silvestri, 618 A.2d 821, 824 (N.H. 1992) (rejecting a per se rule that if the magistrate finds suspect is probably a drug dealer then probable cause to search that person's residence automatically follows); State v. Ward, 588 N.W.2d 645, 652 (Wis. Ct. App. 1998) (To allow a blanket inference that drug dealers keep incriminating evidence in their homes would relieve law enforcement of any responsibility to place before the magistrate the "underlying circumstances" which establish evidence of drug dealing will likely be found in the dealer's residence.).

These cases are consistent with the requirement in this jurisdiction that a finding of probable cause must be grounded in fact. Until today this Court has long recognized that probable cause to search a premises "is established when a sufficient basis *of fact* exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime." Helsley v. State, 809 N.E.2d 292, 295 (Ind. 2004) (emphasis added) (quoting Overstreet v. State, 783 N.E.2d 1140, 1157 (Ind. 2003); Esquerdo v. State, 640 N.E.2d 1023, 1029 (Ind. 1994)). The magistrate must make its determination to issue a warrant "based on the facts stated in the affidavit and the rational and reasonable inferences drawn therefrom." Helsley, 809 N.E.2d at 295; see also State v. Allen, 525 N.E.2d 1267, 1269 (Ind. Ct. App. 1988) ("To demonstrate probable cause to search premises, an affidavit must provide a sufficient basis of fact to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime.").

Despite its length and considerable detail, the affidavit in this case is absolutely devoid of any facts whatsoever demonstrating a nexus between Eaton's alleged drug activity[8] – at a commercial establishment – and his home at a remote location. Even where the facts have left little

---

[8] I say "alleged" because there is considerable question in my mind whether there was sufficient probable cause to arrest Eaton on drug related charges in the first place.

doubt concerning a defendant's drug dealing activity, this Court has observed, "[C]ases involving a lack of nexus between a controlled drug buy and the place to be searched have held the affidavit insufficient to establish probable cause." Figert v. State, 686 N.E.2d 827, 830 (Ind. 1997). The majority does not explain why it has now abandoned the nexus requirement. Nor does it say why it joins the few outlier jurisdictions that require no such nexus.

Today's ruling invites the Government's search of a suspect's business, home, garage, tool shed, workshop, or any other property a suspect may use simply because a law enforcement officer believes, without more, that evidence of crime can be found there. In my view this is an anathema to the mandate of the Fourth Amendment of the United States Constitution as well as Article I, Section 11 of the Indiana Constitution. There were no bases in this case, substantial or otherwise, for the magistrate to conclude that probable cause existed for the issuance of a search warrant. Eaton's motion to suppress should have been granted. Therefore I agree with the result reached by the Court of Appeals and would reverse the judgment of the trial court.